CASE 26.—ACTION BY PORTER A. NEALE AGAINST THE GEORGETOWN WATER, GAS, ELECTRIC & POWER COMPANY FOR DAMAGES BY FIRE FROM DEFENDANT'S FAILURE TO FURNISH FIRE PRESSURE UNDER ITS CONTRACT.—February 23, 1910.

# Georgetown Water, Gas, Electric & Power Co. v. Neale

Appeal for Scott Circuit Court.

R. L. STOUT, Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Waters and Water Courses—Municipal Water Company—Insufficient Fire Protection—Suit for Loss—Evidence—Peremptory Instruction.—A city in contracting with a water company for fire protection represents its inhabitants, and contracts for their benefit, and one who suffered a loss by the company's default was the real party in interest in a suit by him therefor, and was not bound by the testimony of the fire department that the water pressure was all right; and hence a motion for a peremptory instruction for defendant, based on such testimony, was properly overruled.

2. Waters and Water Courses—Municipal Water Company—Insufficient Fire Protection—Suit for Loss—Evidence.—In a suit for loss by fire, wherein the question was simply whether defendant water company maintained the contract pressure in its mains and had them in proper order, plaintiff might show how high such pressure would throw water from a nozzle like that used by the fire department, and with what force it would strike an object when there is such pressure, and the force at the fire in question, or how far water was thrown; but, after the firemen testified the pressure was all right, he should not have been allowed to cross-examine them as to different fires in the city and their result, as it opened too wide a field of investigation.

3.  Waters and Water Courses—Municipal Water Company—
    Sufficiency of Fire Protection—Liability for Loss.—A water
    company, to avoid liability for loss by fire, was not required
    to maintain, at the time thereof, greater pressure in its
    mains than its contract called for, though it may have had
    a higher pressure some other time.

4.  Witnesses—Cross-Examination—Scope.—Where, in a suit for
    loss by fire, based on defendant water company's failure to
    maintain the contract pressure in its mains, evidence was
    not satisfactory as to what force at the nozzle the required
    pressure would reasonably give, defendant's witnesses stat-
    ing in general terms that it was good, but not stating the
    facts as to the force of the water, they may be cross-exam-
    ined as to all that occurred at the fire, and be asked if mud
    came out of the hose, or if the water simply trickled out
    of the nozzle, or how far the force of the contract pressure
    would carry it, or how far the water was thrown at the
    fire, or what force it had then, but the examination should
    be confined to what occurred at the fire in question.

5.  Witnesses—Examination—Admitting Testimony Not Called
    For.—Testimony of a witness as to a matter as to which he
    was not asked should not be admitted.

6.  Trial—Reception of Impeaching Evidence—Cautioning Jury.
    —If the evidence is only competent to impeach a witness,
    the court should so caution the jury.

7.  Damages—Mitigation or Reduction—Effect of Payment of
    Insurance.—A property owner who has two contracts pro-
    tecting him against fire, one with a water company for
    fire protection made by the city, and another with an in-
    surance company, is entitled to be made whole in case of
    a loss; and when he has collected a part of his loss from
    the insurance company, he can only collect the remainder
    on the contract with the water company.

8.  Waters and Water Courses—Municipal Water Company—Suit
    for Loss By Fire—Instructions.—In a suit for a loss by
    fire based on defendant water company's failure to furnish
    the contract pressure in its mains, the proof showed that
    it had timely notice, and the real question was whether it
    furnished the pressure, and an instruction told the jury that
    if "at the time of the fire" in which plaintiff's stable was
    burned defendant failed to furnish its contract pressure in the
    mains, and by reason thereof the fire department was un-
    able to put the fire out before it reached and consumed
    plaintiff's stable, they ought to find for plaintiff, etc. Held,
    that there could be no objection to the instruction, in that
    it used the words quoted.

9. Waters and Water Courses—Municipal Water Company—Loss by Fire—Grounds of Liability.—A water company, under contract to maintain a certain pressure in its mains for fire protection, need not do so till it has notice of a fire, but is then bound to put it on, and it is not liable unless it fails to comply with its contract, and its failure is the proximate cause of loss.

10. Damages—Instructions—Loss by Fire.—In a suit for a loss by fire, based on defendant water company's failure to perform its contract as to fire protection, the court, in instructing the jury to find for plaintiff under certain conditions, should not direct the jury to find his damages at an amount not to exceed that at which he estimated his property worth, less insurance received by him, where witnesses estimated it to be worth much less, but should tell them to find for him its fair value, or so much of it as was burned by reason of defendant's failure to perform its contract, less the amount of insurance collected.

11. Waters and Water Courses—Municipal Water Company—Insufficient Fire Protection—Suit for Loss—Instructions.—In a suit against a water company, the court instructed that if the jury believed from evidence certain facts as to defendant's negligence, and that, by reason of the carelessness or negligence in suffering or permitting certain pipes to become clogged or stopped, "if the defendant did do so," the plaintiff's property was destroyed by fire, to find for plaintiff. Held, that the words "if the defendant did do so" should be omitted therefrom.

12. Waters and Water Courses—Municipal Water Company—Insufficient Fire Protection—Suit for Loss—Burden of Proof—Instructions.—In a suit against a water company for a loss by fire, based on its failure to furnish sufficient pressure in its mains, the burden of proof is on plaintiff to show, not only that proper pressure was not furnished, or was not available by reason of the mud in the main, but also that by reason of this his stable was burned; and hence instructions placing the burden on defendant to show its failure, or failures, did not cause the loss were erroneous.

13. Waters and Water Courses—Municipal Water Company—Insufficient Fire Protection—Suit for Loss—Instructions.—In a suit for loss by fire, based on defendant water company's failure to maintain the contract pressure in its mains, the court should instruct that it is not responsible for failure of the city fire department to fight the fire with skill and diligence, or for any defect in the hose used by it, and un-

less the jury believe defendant failed to furnish the contract pressure in its main, or negligently suffered its main to be clogged, and that but therefor plaintiff's stable would not have burned, they should find for defendant.

BRADLEY & BRADLEY AND JAS. F. ASKEW for appellant.

B. M. LEE for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The Georgetown Water, Gas, Electric & Power Company entered into a written contract with the city, in which it is known as the party of the second part. The contract among other things contained this clause: "Second party agrees to furnish and maintain a water pressure of forty (40) pounds for domestic use, or such as is necessary, and to furnish one hundred (100) pounds pressure for fire protection, or such increased pressure as is required by the National Board of Fire Underwriters." Porter A. Neale owned a stable in Georgetown, which burned on February 8, 1908. The fire originated in a cottage standing only a few feet from the stable. A strong wind was blowing and in a few minutes the stable caught and burned down. Neale brought this suit against the water company to recover for the loss, on the ground that the loss of the stable was due to its failure to furnish water pressure of 100 pounds, as provided in its contract. He testified that when the fire company reached the scene, his stable had not caught, and that if the water had then been turned on, and had the usual force, the cottage would soon have been put out. He also testified that when the water was turned on, mud came; that the water would just drop, and then there was force enough after a while to force the mud out, but before the force was

sufficient to throw the water to the roof of the house his stable had taken fire, and the fire was beyond control. He introduced a number of witnesses who testified to the mud coming out of the nozzle, and to the water just flowing out of the nozzle at first without any force, and these witnesses stated that the stable burned before there was a reasonable pressure of water on the hose.

On the other hand, the proof for the water company was by all the firemen that the pressure was good; that there was no lack of water or lack of pressure; that there was some ice in the hose, and there was some trouble to get the water to run through the hose for this reason, but as soon as the ice was gotten out of the hose, there was no further difficulty. The proof for the defendant also showed that the stable was afire when the fire department arrived on the scene; that it had hay in it; that the fire soon spread to the hay; and that by no sort of pressure after they got there and got the hose attached could they have saved the stable. The plaintiff testified that his stable was worth $1,750, and that he had collected $500 insurance on it. The proof for the defendant by a number of witnesses was to the effect that the stable was worth only $700, and one of them put it as low as $500. The court gave the jury these instructions:

"(1) The court instructs the jury that if they shall believe from the evidence that at the time of the fire in which plaintiff's stable was burned, the defendant failed to furnish a hundred pounds pressure in the water mains, and that by reason of the failure of the defendant to furnish such water pressure for fire protection the fire department of the city of George-town was unable to put said fire out before it reached

or consumed the plaintiff's said livery stable, then you ought to find for the plaintiff such damages, if any, as he sustained by reason of the failure to furnish said hundred pounds of pressure for fire protection, if you believe that the defendant did fail to furnish that amount of pressure, not to exceed the fair market value of the stable destroyed, less $500, $1,250.

"(2) The court further instructs the jury that if you believe from the evidence that the defendant carelessly and negligently suffered or permitted its pipes or hydrants in the vicinity of plaintiff's said stable to become and remain so clogged or stopped up with mud or filth that the water could not freely pass through said pipes until after said fire had gained headway, so that it could not be extinguished with the pressure of a hundred pounds in said mains, and that by reason of the carelessness or negligence of the defendant in permitting or suffering said pipes to become clogged or stopped, if the defendant did do so, the plaintiff's property was destroyed by fire, then you ought to find for plaintiff such damages as he thereby sustained, not to exceed the sum of $1,250.

"(3) Unless you believe from the evidence that the defendant did fail to furnish said hundred pounds pressure in said mains for fire protection at the time of said fire, or that the defendant negligently or carelessly suffered or permitted its pipes or hydrants to become clogged or stopped up with mud or filth so that water could not freely pass through the same, then you ought to find for the defendant.

"(4) Even though you believe that the defendant failed to furnish a hundred pounds pressure, or that the mains and pipes became clogged with mud and filth, yet, if you further believe that said failure or

failures, if any, did not cause the destruction of plaintiff's property, then you ought to find for defendant.''

The defendant asked the court to give the jury these instructions, which were refused:

'' (1) The defendant asks the court to peremptorily instruct the jury to find for the defendant.

'' (2) The court instructs the jury that the defendant does not, under its contract with the city, in any way occupy the attitude of insurer against the loss of plaintiff's stable by fire, and that in no way is defendant responsible for any failure on the part of the city fire department to fight the fire with the best judgment, if any such failure there was, or for any defect in the fire hose used by said department on that occasion, if any there was, and they are instructed that they will find for defendant, unless they shall believe from the evidence that defendant negligently failed, after having received reasonable notice of the existence of the fire in which plaintiff's stable was burned, to furnish in a reasonable time a pressure of a hundred pounds in the mains at its pumping station in Georgetown on the water in said mains.''

The trial resulted in a verdict and judgment in favor of the plaintiff in the sum of $245. The defendant appeals. It is insisted for the defendant that the basis of the action is the contract between it and the city, and that as the entire city fire department testified on the trial that the pressure was all right, the court should have instructed the jury peremptorily to find for it. While the contract was made between the city and the water company, the city in making the contract acted as the representative of its inhabitants, and made the contract for fire pro-

tection for their benefit. The action here is brought
by the property owner, who is the real party in inter-
est as to this loss. No greater force can be given
the testimony of the city officials in this action by
him than would be given the same testimony by per-
sons not in the employment of the city. The city
officials do not speak for him, and he may show what
the facts are, although they may be different from
what their testimony shows. The motion for a per-
emptory instruction was therefore properly over-
ruled.

On cross-examination of the firemen, after they had
testified that the pressure on the mains was all right,
the plaintiff was allowed to ask them as to the pres-
sure at different fires which had occurred in the city,
and as to the result of those fires. This evidence
should all have been excluded. It opened entirely too
wide a field of investigation. The force of the wind,
the skill of the fire department, its success in getting
at the fire, and a number of other circumstances will
enter into the question whether the fire may be put
out. The question here is simply whether the com-
pany maintained the contract pressure upon its mains
and had its mains in proper order. The plaintiff may
show how high a pressure of 100 pounds in the main
will throw water from a nozzle like that used by the
department. He may also show with what force the
water will strike an object when there is a pressure
of 100 pounds in the mains, and he may show the
force of the water at the fire in contest, or how far
the water was thrown. The allegation here is that
the defendant did not maintain a pressure of 100
pounds. If it had a pressure of more than 100 pounds
at some other time, it was not required to have more
than 100 pounds at this time. The evidence in the

record is not satisfactory as to what force at the nozzle a pressure of 100 pounds on the mains would reasonably give.  The witnesses for the defendant state in general terms that the pressure was good, but they do not state the facts as to the force of the water. They may be cross-examined as to all that occurred at this fire, and may be asked if mud came out of the hose, or if the water simply trickled out at the nozzle, or how far the force of 100-pound pressure would carry it, or how far the water was thrown at the fire or what force it had then, but the examination should be confined to what occurred at this fire.  The impression here was evidently made upon the jury that the fire department had heretofore put out fires and saved the buildings; and, whether the cross-examination was intended for this purpose or not, it was calculated to get that idea into the minds of the jury.

The testimony of B. L. Dickson as to what Ernest Ashurst said to him should not have been admitted, as Ashurst was not asked as to this.  The evidence was only competent to impeach Ashurst; and, if the proper foundation had been laid the court should have so cautioned the jury.

In I. C. R. R. Co. v. Hicklin, 131 Ky. 624, 115 S. W. 752, we held where the railroad company had set fire to the plaintiff's house, and she sued for damages, that the fact that she had collected insurance on the building could not be relied upon by the defendant in mitigation of the damages.  But this ruling was based upon the ground that the defendant was a wrongdoer, and that the insurance company did not stand in the relation of a joint tort-feasor with it; that the plaintiff, as the owner of the property, was the proper person to sue the wrongdoer and recover the entire loss.

What her rights would then be as between her and the insurance company was a question not then presented. But that is not this case. The plaintiff here, by his representative, the city, made a contract with the water company for fire protection. He also made a contract with an insurance company insuring him against loss from fire. He thus had two contracts protecting him against the loss of his property. He is entitled to be made whole, and when he has collected on one of his contracts a part of his loss, he can only collect on the other the remainder.

We see no objection to instruction 1 in that it uses the words "at the time of the fire;" for it also told the jury that, in order for them to find for the plaintiff, they must believe from the evidence "that by reason of the failure of the defendant to furnish such water pressure for fire protection the fire department of the city of Georgetown was unable to put said fire out before it reached or consumed the plaintiff's said livery stable." It was the duty of the defendant to furnish the 100 pounds of pressure when notified of the fire. The proof shows that it had timely notice, and the real question in the case was whether it furnished the pressure or not. The pressure could be put on at the power house by turning a lever, which started the pump, and every stroke of the pump would raise the pressure; the pressure on the mains rising instantaneously with the pressure at the power house. The defendant was not bound to maintain a pressure of 100 pounds on its mains until it had notice of a fire, but it was bound to be ready to put on that amount of pressure when it got such notice. Under the evidence it had here ample time for that purpose before the fire department got to the fire, put on the hose, and were ready to use the water. The proof

tends very strongly to show that the stable was afire when the fire department got to it, and that no amount of water pressure could have saved it. The defendant is not liable unless it failed to comply with its contract, and this failure was the proximate cause of the loss.

On another trial the court will omit all the latter part of instruction 1 following the words "find for the plaintiff," and he will omit from instruction 2 all that follows the words "find for plaintiff;" also these words: "If the defendant did do so." In lieu of instruction 3 he will tell the jury that if they find for the plaintiff, they should find for him the fair value of the stable, or so much of it as was burned by reason of defendant's failure to perform its contract as defined in No. 1 or No. 2, less the amount of the insurance collected by him thereon.

The burden of proof is on the plaintiff to show, not only that proper pressure was not furnished, or was not available by reason of the mud in the main, but also that by reason of this his stable was burned. Instruction 4 is erroneous in placing the burden on the defendant to show that its failure, or failures, did not cause the destruction of the property. The same fault exists in instruction 3. In lieu of instruction 4 the court will tell the jury that the defendant is not responsible for any failure on the part of the city fire department to fight the fire with skill and diligence, or for any defect in the fire hose used by it; and, unless they believe from the evidence that the defendant failed to furnish 100 pounds of pressure in its main as defined in No. 1, or negligently suffered its main to be clogged as defined in No. 2, and that but therefor the stable would not have burned, they should find for the defendant.

Judgment reversed, and cause remanded for a new trial.