PARKER-WASHINGTON COMPANY, Appellant, v. H. M. MERIWETHER et al., Respondents.

Kansas City Court of Appeals, June 2, 1913.

1. **SPECIAL TAXES: Repairs as Distinguished from Reconstruction Work.** The city charter provides a method in one section for paving or repaving but says nothing about repairs. In another section it provides for repairs or for "reconstruction and repairs" and provides a different method of assessing the cost. The proceedings authorizing the work employed the terms "reconstruction and repair" and the work was in fact repair instead of a repaving; *held* that tax bills issued as though the work was reconstruction work were void.

2. ———: ———: **Test of Character of Work.** Whether a certain improvement is reconstruction or merely repairs depends upon the nature, character and extent of work, and not upon what it is called. And if there is a dispute as to

whether it is a reconstruction or merely repairs is a question for the jury under proper instructions.

3. **TRIAL: Pleading: Counterclaim.** Where no objection is made to the sufficiency of a counterclaim until after verdict and in the appellate court, the objection comes too late where the counterclaim states any cause of action however defectively.

4. ———: ———: ———: **Reply.** Where there is no dispute over the allegations in the counterclaim and no pleading denying it, the appellate court will not reverse a finding thereon because the evidence is not as full and explicit as it otherwise might be. The case wil not be treated as though a reply had been filed where it was not tried as if one had been filed.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

Affirmed.

*Harry B. Walker* and *Clarence S. Palmer* for appellant.

(1) There was no testimony justifying the judgment for defendants on the counterclaim. There is no right of recovery for the voluntary payment of taxes. Couch v. Kansas City, 127 Mo. 436; Walker v. St. Louis, 15 Mo. 563; Page & Jones on "Taxation by Assessment," secs. 1479, 1480; Schell City v. Rumsey Mfg. Co., 39 Mo. App. 264. (2) The tax bills were valid, the work ·was really reconstruction of a payment and the proceedings were valid. O'Meara v. Green, 16 Mo. App. 118; Ritterskamp v. Stifel, 59 Mo. App. 510; Hall v. Swingley, 159 Mo. 45; Paving Co. v. Muchenburger, 105 Mo. App. 47; Rackliffe v. Duncan, 130 Mo. App. 695; Faraher v. City of Keokuk, 111 Iowa 310; Jones v. Plummer, 137 Mo. App. 377; Noel v. Lee's Summit, 166 Mo. App. 114; In re Flaggin, 60 Barb. 375. (3) There was no testimony that the specifications were not filed in time, and the presumption of regularity arising from the introduction of the tax

bills in evidence was not overcome. Jones v. Plummer, 137 Mo. App. 377; Excelsior Springs v. Ettenson, 120 Mo. App. 215, 232.

*C. E. Denham* and *Hunter M. Merriwether* for respondents.

(1) The tax bills are absolutely void because there were no plans and specifications on file in the office of the city engineer for the doing of the work, as was required by the city charter. Galbraith v. Newton, 30 Mo. App. 386; Traders Bank v. Payne, 31 Mo. App. 522; McQuiddy v. Brannock, 70 Mo. App. 547. (2) A subsequent confirmation by the council could give it no validity. Kilroy v. Oppenheimer, 55 Mo. 376: Dickey v. Holmes, supra.

TRIMBLE, J.—Appellant sued defendants upon certain special tax bills issued by Kansas City, Missouri, for work done on Eleventh street upon which defendant's property abutted. The suit involves the validity of the tax bills as to two lots. There were tax bills on two other adjoining lots owned by defendants but, prior to the institution of suit, one of defendants had been induced to pay these, amounting to $167.67, for the recovery of which defendants set up a counterclaim based on the ground that payment had been obtained by fraud, deceit and duress.

The case was tried before the court sitting as a jury.

A defense interposed to the tax bills was that the work done was, in fact, repair work, but the tax bills were issued according to the method of procedure authorized by the city charter for reconstruction work, and the cost was apportioned according to the method provided for that kind of work; there were other defenses but it is unnecessary to notice them.

The court found the issues of law and fact in favor of defendants and against plaintiff; found that

the tax bills sued on were void; that the defendants owned the other two lots mentioned when tax bills, of the same series and character and under the same ordinance as those sued on, were issued; and that plaintiff by fraud, deceit and duress, induced defendants to pay the bills issued thereon to the amount of $167.76. judgment was thereupon rendered for defendants on the tax bills sued on, and for defendants on their counterclaim in the sum of $167.76. Declarations of law were given by the court to the effect that, if the evidence showed that the work for which the tax bills were issued was repair work, the plaintiff could not recover; that if the evidence showed that the ordinance, under which the work was done and the tax bills issued, fails to specify definitely the kind and character of work to be done, then the tax bills are void; and that if the evidence showed that the two tax bills which were paid were of the same series and character, and were issued under the same ordinance as those sued on, on property owned by defendants, and that plaintiff induced and caused defendants to pay said bills by deceit and false statements, then judgment must be rendered for defendants on the counterclaim. Plaintiff appealed.

As to the first defense interposed, namely, that the work was repair work, there is this to be said: The power and procedure to "pave and repave" streets is contained and set forth in sections 2, 4, 5, and 6, article 9 of the City Charter, 1898. Nothing is therein said about repair. And the cost of such paving or repaving is to be charged against the lands fronting on the whole street in proportion to their frontage. Other sections provide for repairing or for "reconstruction and repair" of streets, but specify a different procedure; and the cost of such repair or of "reconstruction and repair" shall be charged against the particular lot or lots or parcel or parcels of land fronting on the spot where such work may be

done. [Sec. 7, Art. 9, Charter.] Another method for keeping a street in repair for a term of years is found in section 21 of article 9, but it is conceded that the work was not done or attempted to be done under that section. The evidence fully supports the finding of the court that the work authorized to be done on the street was in reality repair work and not a reconstruction or repaving of the street. The proceedings do not call it a paving or repaving of the street as provided for in section 2 but term it "reconstruction and repair" work as those terms are used in section 7 governing repairs. It was treated in the records as repair work and the evidence shows that the board of public works, at the time, thought the work authorized was repair work. The condition of the street was that of one reasonably calling for repairs and not a repaving thereof. The first estimates made showed that the street was to be repaired and not entirely reconstructed or repaved; also the provisions for joining the new work properly to the old shows it was repair and not reconstruction work. The notice published was entitled, "Repairing Eleventh street." The proceeding and the assessment of the cost, however, were according to the method prescribed in section 2 for paving and repaving. In fact, nothing is said in section 2 of article 9 of the City Charter about repairs. It provides that streets, alleys, avenues, sidewalks and public highways may be constructed, reconstructed, paved and repaved, etc., but nowhere uses the word "repair." Section 7 of article 2 uses the words "reconstruction and repair" and, as these are the terms used throughout the proceedings, it would seem that the original intention was to do the work authorized by that section. In one sense, the term "reconstruction" and the term "repair" are so dissimilar as to render it difficult to make both terms applicable to the same work at the same time. In other words, ordinarily it is not easy to conceive of a thing

being reconstructed and repaired at one and the same time. To "reconstruct" is to construct again, to rebuild, to form again or anew; while to "repair" is to restore to a sound state after decay, injury, dilapidation or partial destruction; to mend. The only sense in which the two terms can be used together concerning a work is that, in those places where decay or dilapidation is so complete as to require a total reconstruction or forming anew, the work can be said to be "reconstructed," while at other points where the decay is only partial, the work is merely mended or repaired. In this sense, as applied to a street in which there are merely places or holes where the pavement has entirely decayed and others where it is only partially destroyed, and the remaining portion is in a sound condition, the terms "reconstruction and repair" may be a strictly definite and accurate description of the work to be done. When, however, the proceedings authorizing work to be done employ the words "reconstruct and repair" it should be held to be authorized under those sections which use those terms, and not under another and totally different section which contemplates either the creation or construction of the work as an original matter, or the total substitution of a new work in place of the old. Whether an improvement is a "reconstruction" or merely "repairs" depends upon the character and extent of the work itself, and not upon what it is called. [Ritterskamp v. Stifel, 59 Mo. App. 510.] Whether it is one or the other depends upon the nature, character and extent of the work. [Rackliffe v. Duncan, 130 Mo. App. 695.] And where there is a dispute as to the nature, character and extent of the work, the question of whether the work done was "reconstruction" or merely "repairs" is a question to be determined by the jury under proper instructions defining what constitutes each. [O'Meara v. Green, 16 Mo. App. 118; Barber Asphalt Paving Co. v. Muchenburger, 105 Mo.

App. 47.] In the case last cited the court gave a declaration that, if the work done was repairs, then the finding must be for defendant. The court, however, found for plaintiff, and the appellate court treated this as a finding by the court that the work was not repairs but was a reconstruction, and held that, as there was evidence to support such finding, the trial court's judgment must stand. So in this case the trial court gave a declaration that, if the work done was repairs and not reconstruction, then the finding must be for defendants, and thereafter found for defendants. There being ample evidence to support such finding, the appellate court will not interfere. The fact that there was a hole in the pavement on one side of the street at an intersection of streets and another hole on the same side of the street at the other end of the block or further away while all the rest of the street was in sound condition, did not, under the proceedings as they exist in this case, authorize the contractor to change a work of repairs into reconstruction work by merely taking up the granite blocks, with which the street was paved, and turning them over and relaying them the same as before. We do not mean to say that, if the city authorities had authorized the reconstruction or repaving of Eleventh street, the fact that the street merely needed repairs would invalidate the tax bills. That is not this case, and no decision of that kind is made. But the work authorized to be done being repair work, and the work necessary to be done, and which was in fact done, being repair work, the property owner will not be made to pay for reconstruction work. Hence the tax bills, which were issued as for reconstruction work, are void.

Appellant contends that the finding of the court on defendant's counterclaim cannot be permitted to stand, since it is without sufficient evidence to support it. If the allegations of the counterclaim had been disputed, there might be some force in this con-

tention. But, in the state of the pleadings, the objection is untenable.

In the first place, there was no objection made in any way to the sufficiency of the counterclaim as a pleading, and hence, it is good after verdict. In the next place, there was no dispute over the allegations contained in the counterclaim. It seems that the defendant, Hunter M. Meriwether, upon learning of the work to be done, went to the members of the board of public works about it and they thought the work ordered was repair work and so told defendant; that when said defendant learned the whole pavement, good as well as bad, was about to be taken up, he notified the contractor that payment of the tax bills would be resisted; that after the work was done, he again notified plaintiff's agents that he would not pay and requested them to bring suit at once so the matter could be decided as soon as possible; that instead of doing so, some of plaintiff's agents, taking advantage of said defendant's absence from the State, went to his wife, who knew nothing of the facts, and by representations made to her, induced her to pay the two tax bills mentioned in the counterclaim. Upon defendant's, Hunter M. Meriwether's return, he called such agents to account for so doing, and they merely laughed saying the only reason they did not present all four of the tax bills to her was because they did not think the wife had money enough to pay all during her husband's absence. There was no testimony controverting this evidence and no pleading denying the issues raised by the counterclaim, no reply thereto being filed. The case was not tried as if a reply had been filed to the counterclaim, no evidence controverting the counterclaim in any way being offered. Hence the case cannot be treated as if a reply had been filed. In such case our duty is plain. The judgment of the circuit court upon both the petition and counterclaim must be affirmed. It is so ordered. All concur.