White v. White.

---

No. 27,562.

EDWARD C. WHITE, *Appellant,* v. GEORGE W. WHITE, *Appellee.*

(260 Pac. 651.)

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE — *Contract for Services and Right of Inheritance — Construction.* A contract entered into between father and son provided that the son was to work for the father during the life of the father and at his death was to receive one-fourth of the father's estate, and in addition thereto was to enjoy his legal rights of inheritance in the balance of the estate. It further provided that if the son was unable to get along satisfactorily until the death of the father he should under such circumstances receive the return of the cash which he paid to his father, with interest, and $25 per month for all the time he worked for the father, with interest thereon, in which event he should not hold one-fourth of the property or the increase, but should come in as a legal heir and hold his legal rights. It is held that such contract entitles the son, when unable to get along satisfactorily, to recover from the father not only the sum advanced to the father and $25 per month with interest, paid in cash, but also entitles him to have a trust declared as to the promised inheritance at the death of the father.

2. SAME—*Contract for Inheritance—Measure of Recovery.* The portion of the father's estate to which the son is entitled under the circumstances as above outlined is that part or portion which would have belonged to the son under the law and the facts as to heirs if death had occurred at the time of the making of the contract.

3. SAME—*Construction of Contract.* The provision of such contract requiring that "the parties must take their part in property and not in cash" does not apply to the money advanced and the $25 a month and interest, which is a substitute for the one-fourth interest if no contingency had arisen.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. . Opinion filed November 5, 1927. Affirmed in part and reversed in part.

---

Damages, 17 C. J. p. 931 n. 38. Specific Performance, 36 Cyc. pp. 736 n. 52, 738 n. 60. Wills, 40 Cyc. pp. 1063 n. 54, 1064 n. 56, 1066 n. 76, 1067 n. 80.

29—124 KAN.

*Walter F. Jones,* of Hutchinson, for the appellant.

*C. E. Branine* and *H. R. Branine,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action brought in the district court of Reno county by Edward C. White against his father, George W. White, to recover judgment of absolute ownership of an undivided five-eighths interest in all the property of the defendant, both real and personal, and to have such interest adjudged a trust affecting all the property of the defendant, and a trustee appointed to administer the property for the use and benefit of plaintiff and defendant. The plaintiff had paid over to his father the sum of $1,000 on the day he became 21 years of age, and commenced working for him under an oral agreement by which for his continued services he was to have a one-fourth interest in the father's property at the death of the father. This agreement was reduced to writing six or seven years later and the relation continued thereunder for nearly twenty years before this action was commenced. The answer admitted the execution of the contract, denied the breach thereof by the defendant, and prayed for a judgment upon a different construction thereof. The case was tried by the court without a jury, and judgment was rendered in favor of the plaintiff for $13,400 in lieu of his claimed share or interest in the property of his father, that amount being composed of the sum of $1,000 invested with interest and $25 per month for the nearly twenty years, with interest. The trial court denied the right of the plaintiff to the one-fourth interest claimed by him as his earned interest in his father's property, and also the one-half interest in trust as his share by inheritance. From this ruling the plaintiff appeals, and the defendant also appeals from the ruling of the court giving the plaintiff a judgment and lien for the specific amount in cash, instead of requiring plaintiff to take such amount in property, as it is claimed the contract provides.

Most of the evidence besides the contract itself was concerning the execution of deeds by the defendant and his wife, Georgia A. White, in 1921, when the defendant was very ill and not expected to live. They were made to the plaintiff and his sister, the only children of the defendant, giving the wife a life estate in three-fourths of the property, and were delivered to the wife, who died in March, 1925. After her death the defendant destroyed the deeds. The court declined to hear evidence as to the present value of the

property and the details of expenses paid to each party and made no finding as to who was the cause of the breach or disagreement. The case hinges almost entirely upon the construction of the contract, prepared and written by the defendant in his own language and terms, which is as follows:

"This contract and agreement, made and entered into on this 23d day of May, 1906, by and between George W. White and Georgia A. White, his wife, as parties of the first part, and Edward C. White as partie of the second part, all being of legal age and sound mind, and citizens of Reno county, Kansas.

"We, as parties of the first part, does hereby agree to contract partie of the second part, and undivided one fourth of all our property both real estate and persinal that we own at the dait of this intriment, together with one-fourth of all the increase or accumilation that we may accumilate, togher with Edward C. White's work and all of the property.

"For a consideration of one thousand dollars cash in hand, and Edward C. Whites work from the time he become of age to the time of George W. Whites death, this one forth of the property and acumilation does not become a part of the estate but is Edward C. Whites property at the time of George W. Whites death, providing said Edward C. White remains with us and works with us harmoniesly until the death of George W. White, an at this time he may take his one forth of all the property by asuming one forth of all the indebtedness and divide it from the estate for the one thousand dollars and his work from the time he become of age to the time of George W. Whites death.

"After second partie has received one forth of all the entire wealth that he have contracted for, he shall also hold his legal birth rights in the estate of George W. White as the law provides.

"The second partie does also release all claims further than this against first parties, and also assumes one forth of the indebitness that is aginst their property at the time or dait of this contract which is to be paid of jointly, And if said second parties is unable to get along satisfactory until the death of said George W. White he may at any time quit with the first parties and draw twenty-five dolars per month for his survic from the time he become of age or the dait of this contract to the time he quits, with interest on the wages at eight per cent per annum, and also draw one thousand dollars with interest at eight per cent per annum from the time he become of age to the time he quits work, and this shall be all he gets for his labor from the time he began work to the time he quits. And in this event he shall not hold one forth of the property and one forth of the increas, but shall come in as a legal air and hold his legal rights only. In case Edward C. White should die faithfully performing his contract before said George W. White, then said Edward C. Whites widow or children shall draw one forth of the increas or accumilation and the one thousand dollars with interest at eight per cent per annum at his death for his familys seport and education but they shall not draw the one forth that Edward S. White contracted for but it shall revert back to the first parties.

"In any case that this contract may be closed or carried out the parties

must take their part in property and not in cash, and assume their proportion of the indebtedness.

"The first and second parties may at any time thay see fit to sell any part of this property by agreeing to do so with one and nother can and this contract shall hold good on any thing they may invest in.

"The value of property at the dait of this contract is twenty five thousand dollars that this contract is entended to convey the one forth to Edward C. White. This contract is not to go on record, on account of misterfying the tiles and hendering the selling or martgaging of said property, but to be hold by the parties concerned.

"This contract is not intended to convey any titles, but to agree to do so if said Edward C. White fulfills his part of said contract.

"GEORGE W. WHITE.
"GEORGIA A. WHITE.
"EDWARD C. WHITE."

The appellant denominates the joint venture in which the father and son were embarked under the terms of the above contract as a partnership, and the termination thereof by the theory and judgment of the trial court as a forfeiture of his one-fourth interest in the joint enterprise, and reminds us that courts abhor forfeitures and never enforce them unless necessary to enforce the law or do justice between the parties. There is no question about the rule as to forfeitures, but is it a forfeiture which deprived the appellant of his one-fourth interest under the contract? Is it not rather a contingency or alternative provision in the contract itself? The fifth paragraph of the contract specifically stipulates for what might be very properly called compensation or liquidated damages if he is unable to get along satisfactorily.

"Where parties, by agreement, fix the measure of recovery due from the one to the other, their agreement governs, and abstract principles of law relating to the measure of recovery when argeements are wanting are inapplicable." (*Henshaw v. Smith,* 102 Kan. 599, syl. ¶5, 171 Pac. 616.)

The case just cited was quite like this one in many points. A tenant for over twenty years made permanent improvements upon the promise that if he had to move the owner would pay him for the improvements. The parties themselves have provided in their contract for the contingency of not getting along satisfactorily, and their arrangement or plan must be followed unless it is unconscionable. This same principle was fully discussed in a recent insurance case (*Myers v. Liberty Life Ins. Co.,* 124 Kan. 191, 257 Pac. 933), where it was held the incontestable clause was not involved in the construc-

tion of a separate and distinct suicide clause providing amount of payment in the happening of that contingency. So here, when it is concluded that they are unable to get along satisfactorily, then the fifth paragraph of the contract applies to the situation, and an amount easy of calculation takes the place of the one-fourth interest provided if the arrangement had continued to the death of the appellee. We think the trial court was right in so holding and finding there was due the appellant under the provision of the fifth paragraph $13,400 with interest, but we think the trial court erred in not giving force and effect to the entire provision made for such contingency. The remaining part of the provision is as much a part of the contract as that which could be calculated and reduced to dollars and cents. The return of the $1,000 with interest and the $25 per month with interest was a substitute for the one-fourth interest, but nothing more. The fifth paragraph, after outlining as to the return of the $1,000 and the payment of the $25 per month with interest, goes on to provide, in substance, that in this event he shall not hold one-fourth of the property and one-fourth of the increase, but shall come in as a legal heir and hold his legal rights. This is as much a part of what he was to get in case he was unable to get along satisfactorily as it is under the preceding paragraph in case he did get along all right until the death of the appellee.

We have answered one of the two arguments of the counsel for appellee on this subject by showing this provision is a part and portion of what is to be due appellant in case of the contingency. The other argument is that in the cases cited by appellee on this subject the sole and only compensation of the parties claiming property under such promises was the real property to be devised. In many cases their entire living expenses from the start were furnished. In others the only service or return intended to be given was affection and obedience. If we are right in concluding that the contract gives to the appellant the right of inheritance just the same under the provision for the contingency as under the preceding paragraph or the plan generally, there is an abundance of authorities enforcing such provisions when made by contract, either written or oral, after the death of the owner of the property, and preserving and protecting such interest prior to his death. The facts and circumstances in the case of *Dillon v. Gray*, 87 Kan. 129, 123 Pac. 878, are very similar to those in this case, and the court enforced the contract even

against the claims of a second wife. See, also, *Nelson v. Schoonover,* 89 Kan. 388, 131 Pac. 147; *Schoonover v. Schoonover,* 86 Kan. 487, 121 Pac. 485; *Taylor v. Taylor,* 79 Kan. 161, 99 Pac. 814; *Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743. The courts will protect such rights by injunction or otherwise in the lifetime of the owner, if there is danger of the property being disposed of or conveyed.

"A son who has supported his father for a number of years under an agreement that he is to become at once the owner of a tract of land, and that the legal title is to be vested in him at his father's death, by will or otherwise, and who in reliance thereon has improved the property and performed service the value of which cannot readily be estimated, is entitled to an injunction against the execution by his father of a deed to some one else." (*Holland v. Holland,* 89 Kan. 730, syl. ¶ 1, 132 Pac. 989.)

There is room for discussion as to the extent of the interest of the son in his father's property by inheritance. At the time the contract was made and executed it was by law one-fourth; since the death of the mother it is one-half. The fact that the mother signed the contract strengthens the argument for one-half. On the other hand, there might have been other children born to these parents which would have reduced the share of legal inheritance of this son. But we are basing this decision on the language of the contract as it was intended and necessarily understood when it was made, which was, of course, one-fourth, and such common understanding and intention is just as effective as if the contract had said one-fourth. This interest should be impressed as a trust upon the entire property of the appellee until his death, and a trustee should be appointed to administer such trust.

The appellee contends that the court erred in making the allowance to the appellant in cash instead of requiring him to accept it in property. We think not. The language is, "the parties must take their part in property and not in cash." This necessarily refers to the proportional part or portion in the property and not this money substitute for part or portion. We have assumed there is no controversy about the lot mentioned in the judgment, title to which is given by the trial court to appellant.

The judgment of the trial court is affirmed in every particular except the quieting title in the appellee and failure to declare a trust estate in appellant of one-fourth of the entire estate of the appellee except the money judgment given appellant herein and indebtedness

existing when this action was commenced.  To that extent the judgment is reversed with instructions to render judgment accordingly, declare a trust, and appoint a trustee.