No. 40,219

Anna C. Anderson and Jo Ann Brewer, *Appellees*, v. L. W. Rexroad and Jay M. Rexroad, a Co-Partnership, d/b/a L. W. Rexroad and Son, *Appellants*.

(306 P. 2d 137)

Opinion filed January 12, 1957.

*Drew Hartnett,* of Salina, argued the cause, and *L. O. Bengtson,* of Salina, was with him on the briefs for appellees and cross-appellants.

*Thomas M. Lillard, Jr.,* of Salina, argued the cause, and *C. L. Clark* and *James P. Mize,* both of Salina, were with him on the briefs for appellants and cross-appellees.

The opinion of the court was delivered by

FATZER, J.: This is the final chapter of an action brought by plaintiffs, as third party beneficiaries of a contract between the defendants and the City of Assaria, Kansas, to recover damages from the defendants for the total destruction of their home and its contents located in that city. This case was here in 1954 (*Anderson v. Rexroad,* 175 Kan. 676, 266 P. 2d 320) and again in 1955 (*Anderson v. Rexroad,* 178 Kan. 227, 284 P. 2d 1077). In the first appeal it was determined that the contract entered into between the defendants and the City of Assaria was to be regarded as one for the benefit of the injured plaintiffs who may maintain an action thereon, and that when analyzed, the terms of Clause 10 (t), hereinafter set forth, were clear and unequivocal; that the language used in such section must be given its plain and ordinary meaning and that when this was done the contract "means exactly what it says, *i. e.,* that the contractor shall be liable for all damages to buildings or other property." (*Anderson v. Rexroad,* 175 Kan. 676, 679, 266 P. 2d 320.) In the second appeal it was held that allegations in defendants' answer based upon negligence of a utility company in failing to give notice to defendants of the location of its natural gas pipe line did not constitute a defense to plaintiffs' cause of action upon the contract and they were properly stricken.

The defendants are general contractors and on August 31, 1951,

entered into a written contract with the City of Assaria to make certain street improvements within that city. Under the general clause of the contract dealing with the responsibility of the contractor, Clause 10 (a) provides:

". . . All losses or damages arising from the nature of the work to be done, from the action of the elements, or from unforeseen circumstances or difficulties, shall be sustained by the contractor . . ."

and under the same clause (t) it further provides:

"Property Damage. *The contractor shall be liable for all damages to build-ings,* structures, trees, shrubbery *or other property,* located outside of the con-struction limits or located within these limits but not designated for removal and not interfering with the construction of the proposed improvements. *The contractor, at his expense, shall repair, replace or reconstruct such property or otherwise make amicable settlement for such damage* claims within thirty (30) days after the claim is filed. In case the contractor fails or refuses to make settlement within such period, or in case the terms of such settlement can not be agreed upon, the question of damages and the amount thereof shall be submitted to arbitration." (Emphasis ours.)

The plaintiff, Anna C. Anderson, is the widow of John Anderson, deceased. John and Anna acquired title to the property in question in 1936. The plaintiff, Jo Ann Brewer, is the married daughter of John and Anna and resides in Kansas City, Missouri. Plaintiffs jointly owned the property upon which was located a five-room one and a half story frame house, completely furnished. The house was at least 67 years old and on the outside "the paint was pretty well peeled off"; it was not completely modern; there was a pitcher pump in the kitchen which drew water from a cistern; it had electric lights and gas but no inside toilet facilities; there was city water on the lot but not in the house; however, there was considerable utility space; upstairs was a good sized attic, two large bedrooms and clothes closets; downstairs was one large bedroom, a living room and dining area combined into one large room, a kitchen and two porches, one of which was screened.

On February 2, 1952, this house and its furnishings were totally destroyed by fire resulting when a bull dozer owned by defendants and operated by their employee in performance of the contract be-tween them and the City of Assaria, struck and ruptured a natural gas pipe line belonging to a utility company and located just east of plaintiffs' property.

Anna C. Anderson is 67 years of age and resides in Assaria. She derives her livelihood from nursing. At the time the home was

destroyed she was caring for an elderly lady in Lindsborg, about eight miles from her home. On week ends and other available opportunities when she was not working, Anna returned to her home in Assaria where she received her family and guests. At all times when she was absent the utilities in the home were connected for her immediate use upon her return. All of her earthly possessions were kept in this home.

Following the fire and pursuant to the terms of the contract, plaintiffs made demand upon defendants to replace or reconstruct the property destroyed or make amicable settlement for damages. This was refused. Plaintiffs then requested arbitration as provided in the contract and upon its refusal, instituted the present action to recover the fair and reasonable replacement cost of the home, the furniture and contents, and for their loss of the use of this property.

Upon the issues joined by the pleadings trial was had by a jury which returned a verdict for plaintiffs in the sum of $7,075. Special questions were submitted by the trial court to the jury, which, together with the jury's answers thereto, are as follows:

"Question 1: What do you find to be the fair and reasonable replacement cost of the plaintiffs' dwelling destroyed by fire on February 2, 1952?

"Answer: $5,800.00.

"Question 2: What do you find to be the fair and reasonable replacement cost of the plaintiffs' personal property destroyed by fire February 2, 1952?

"Answer: $1,750.00.

"Question 3: What do you find to be the reasonable monthly rental value from February 2, 1952 to November 14, 1955, of plaintiffs' dwelling as furnished with plaintiffs' personal property?

"Answer: $50.00.

"Question 4: Do you find from the evidence that defendants proved that the plaintiffs were financially able to mitigate their damage for loss of use after the fire of February 2, 1952?

"Answer: No.

"Question 5: If you return a general verdict for the plaintiffs, then state how much you allowed therein, if anything, for:

"(a) Loss of house? Answer: $3,800.00.

"(b) Loss of furniture and contents of house? Answer: $1,000.00

"(c) Loss of use? Answer: $2,275.00."

Judgment was entered for the plaintiffs upon the verdict and special questions of the jury, and upon defendants' motion for a new trial being overruled, they have appealed.

The principal question presented in this appeal is the proper measure of damages. The question was raised by objections to

plaintiffs' evidence and to instructions of the trial court as to the character of evidence by which plaintiffs' damages might be measured. As preliminary, we note the defendants concede there was competent evidence as to the damage for loss of the personal property and that portion of the judgment should stand. No further mention will be made of this item except as is necessary in discussing the issue concerning the award of proper damages for the destroyed dwelling. While the defendants further concede that as a result of previous appeals to this court they are liable to the plaintiffs for all damages to the destroyed dwelling, the crux of their argument is that the trial court erred in admitting evidence of its replacement cost without considering evidence of its depreciation and in instructing the jury that it could not consider any evidence regarding depreciation in determining that cost.

In dealing with the measure of damages, the trial court in effect instructed the jury that the defendants were liable as a matter of law for all damages to buildings or other property located in the City of Assaria resulting from work performed under the contract; that the defendants agreed, at their own expense, to replace or reconstruct or otherwise make amicable settlement for plaintiffs' damage claims; that since the defendants denied liability they could not exercise the right of election as to the method of settlement and, as a result, the right to elect the method of settlement under the contract became vested in the plaintiffs; that the plaintiffs elected to recover the replacement cost of the property destroyed and that such cost be such a sum of money as would enable the plaintiffs to reconstruct the dwelling and repurchase similar personal property as that destroyed; that as a matter of law it should award the plaintiffs the cost of replacing the dwelling and contents in a sum not exceeding that prayed for in the petition, to be ascertained from the evidence; that it disregard any evidence pertaining to depreciation due to the age, use, condition and state of repair of the dwelling and contents; and, that its verdict must be based only on evidence showing the replacement cost of the dwelling and personal property.

Pursuant to the terms of the contract, the defendants had the right to elect between two methods of settlement of plaintiffs' damages; first, by replacing or reconstructing plaintiffs' property destroyed, or second, by making amicable settlement therefor. Ordinarily, where the promise is in the alternative to do one or the other of certain things, the promisor is bound to perform in one or

the other of the ways specified, and where the promisor has the election, he can be charged with a breach only when he refuses to perform both. (17 C. J. S., Contracts, § 455, p. 935.) When demand was made upon the defendants for the damages sustained, they had the right to make amicable settlement and might properly have made the same on the basis of replacement cost, less depreciation, however, they wrongfully refused to perform pursuant to either method although plaintiffs' claim for loss, subsequently sustained by the jury, was submitted to them. Such refusal constituted a breach of the contract and a repudiation of an obligation enjoined upon the defendants by its provisions. The right to elect which alternative they would perform was a privilege to be exercised by the defendants when they admitted liability, but not after they had repudiated and resisted unavailingly. One who repudiates his obligation under a contract cannot thereafter exercise the right of election contained in its provisions; the right of election passes to the other party who may elect which alternative he will accept. (*Prudential Ins. Co. of America v. Faulkner*, 68 F. (2d) 676; 94 A. L. R. 1160; *Blake v. Paramount Pictures*, 22 F. Supp. 249; *Washoma Petroleum Co. v. Eason Oil Co.*, 173 Okla. 430, 49 P. 2d 709; 12 Am. Jur. Contracts, § 322, p. 877; 17 C. J. S. Contracts, § 455, pp. 935, 936; Restatement of Law, Contracts, § 344, p. 565.)

In the first appeal this court analyzed the contract sued upon, considered every point presented by counsel, and concluded that the terms of Section 10 (a) and (t) were express, clear and unequivocal, and. nothing elsewhere in the contract conflicted with them; that the language used in such section must be given its plain and ordinary meaning; and, that if the court were to hold otherwise, it would be making an agreement for the parties which they did not make for themselves. When the language of such section is given its plain and ordinary meaning, it is crystal clear that in the event of loss, the defendants expressly fixed the measure of recovery of damage to buildings or other property resulting from work performed under the contract to "repair, replace or reconstruct" such property at their own expense, or otherwise make amicable settlement for damage sustained. That the defendants lost the right of election of the method of settlement has been determined. Obviously, there was nothing to repair since the dwelling was totally destroyed, and plaintiffs elected to have it replaced. The rule is firmly established in this jurisdiction that where parties, by agree-

ment, fix the measure of recovery due from one to the other, their agreement governs, and abstract principles of law relating to the measure of recovery when agreements are wanting are inapplicable. (*Henshaw v. Smith*, 102 Kan. 599, 171 Pac. 616, Syl. ¶ 5; *White v. White*, 124 Kan. 449, 260 Pac. 651; *Glascock v. Stamey*, 130 Kan. 838, 288 Pac. 579, Syl. ¶ 2.) Furthermore, the terms of such section are explicit, particularly those pertaining to the measure of recovery in the event of loss, and had the defendants intended that such measure include deductions for depreciation they could have expressly so provided.

The words "replace" and "reconstruct" have no technical meaning and should be construed according to their approved usage. (*Anderson v. Rexroad*, 175 Kan. 676, 679, 266 P. 2d 320; 12 Am. Jur. Contracts, §§ 223, 229, pp. 751, 758.) Our research does not indicate that the word "replace" has been previously defined by this court. Webster's New International Dictionary, Second Edition, defines it: "To place again; to restore to a former place, position, condition, or the like"; "to take the place of; to serve as a substitute for, or successor of"; "to supply an equivalent for." The word is defined in Black's Law Dictionary, p. 1463: "To place again, to restore to a former condition"; and, Words and Phrases, Vol. 37, p. 11, defines it generally: "To place again, to restore to a former condition." The word "reconstruct" was defined by this court in *School District v. Robb*, 150 Kan. 402, 93 P. 2d 905, in which *Parker-Washington Co. v. Meriwether*, 172 Mo. App. 344, 158 S. W. 74, was quoted with approval as follows: " 'To "reconstruct" is to construct again, to rebuild, to form again or anew.' " Webster's New International Dictionary, Second Edition, defines it: "To construct again; to rebuild"; Black's Law Dictionary, p. 1437, defines it: "to construct again, to rebuild, either in fact or idea, or to remodel, to form again or anew as in the imagination or to restore again as an entity the thing which was lost or destroyed"; and, Words and Phrases, Vol. 36, p. 525, defines it generally: "to construct again; to rebuild; to form again or anew."

When the words "replace" and "reconstruct," as used in the quoted portion of Section 10, are given their ordinary and accepted meaning, they negate the application of the element of depreciation as a factor to be considered in awarding damages for loss resulting from work performed under the contract and we have no difficulty in concluding the trial court correctly instructed the jury that in

ascertaining the plaintiffs' damages, it allow such a sum of money as would permit the reconstruction of the destroyed dwelling without consideration of the element of depreciation.

Defendants' able and industrious counsel cite many authorities and particularly *Kennedy v. Heat and Power Co.*, 103 Kan. 651, 175 Pac. 977; 7 A. L. R. 274; and, *Foster v. Humburg*, 180 Kan. 64, 299 P. 2d 46 in which are set forth abstract principles of law relating to the measure of damages for the negligent destruction of property by fire to the effect generally that where there is no malice or willful wrongdoing, the measure of damages is the fair and reasonable value of the property at the time and place of its destruction, and to arrive at the damage sustained, a permissible method of proof is by showing the cost of replacing the property, less any depreciation from age, use or condition. We have no quarrel with these decisions. They are sound and we adhere to them, but, the trouble with them is that, from the defendants' standpoint, they are not applicable since the defendants' contract expressly fixed the measure of recovery. (*Henshaw v. Smith*, supra; *White v. White*, supra; *Glascock v. Stamey*, supra.) Moreover, the defendants concede this action is not based upon tort; in their brief they state: "The action is therefore based entirely upon contract and not upon tort, there being no allegation or proof of any question of negligence." The authorities relied upon set forth general rules for damages to property based upon tort; they are inapplicable in an action—such as the instant case—to enforce the measure of recovery expressly provided by contract. The trial court did not err in refusing defendants' requested instructions and special questions purporting to establish the measure of damages in a manner other than as was expressly provided in the contract.

Defendants argue the trial court erred in permitting the jury to determine the loss of use of the property from the date of the fire until the date of the verdict in addition to the replacement cost, and in allowing it to ascertain the monthly rental value of the destroyed property. The trial court instructed the jury in effect that it was the duty of the plaintiffs to mitigate their damages for loss of use of the dwelling and personal property, if within their financial means, but if there was reasonable grounds for plaintiffs' failure to do so, then it should award the plaintiffs such damages as would be a reasonable rental from February 2, 1952. As previously noted, the jury found plaintiffs were financially unable to

mitigate their damages for loss of use after the fire and fixed the reasonable monthly rental at $50.

The burden of proof to show that plaintiffs could, with ordinary diligence, mitigate their loss by restoring the property destroyed was upon the defendants. This court has held (*Miller v. Kruggel,* 165 Kan. 435, 195 P. 2d 597; *Krehbiel v. Goering,* 179 Kan. 55, 293 P. 2d 255) that the mitigation of damages is a matter of affirmative defense and the burden of proof is upon the party who seeks to establish it. But, the defendants failed to sustain this burden.

Generally speaking, there may be a recovery for the loss of use of property, providing the use is a lawful one and the damages are established with reasonable certainty (25 C. J. S., Damages, § 41, pp. 514, 515), and, where property is attached to land, such as was plaintiffs' dwelling, and it is damaged or destroyed, the owner is entitled to damages, which may not exceed the value of the property, for his loss of use or for loss of rental up to the time when, with ordinary diligence, it could have been restored, whether in fact it was restored or not. The value of its use is not the mere value of its intended use but of its present potential use whether availed of by its owner or not (15 Am. Jur., Damages, §§ 129, 131, 132, pp. 537, 540, 541). The plaintiffs made demand, with dispatch, upon the defendants for settlement of their damage claims and defendants, with the exercise of ordinary diligence, could have replaced or reconstructed the destroyed property or made amicable settlement of the damages sustained, however, they chose to deny liability, resulting in a breach of their contractual obligations to the plaintiffs. Under the facts, conditions and circumstances disclosed by this record, they may not refuse to perform such obligations and thereafter escape payment for the reasonable use of the plaintiffs' property denied them since February 2, 1952, particularly in view of the finding of the jury that the plaintiffs were financially unable to mitigate their damages. There was substantial competent evidence to sustain the jury's finding, and the trial court did not err in its instruction to the jury, in submitting question No. 3 for its consideration, or, in entering judgment for the loss of the use of the destroyed property.

The defendants next contend that the damages permitted by the trial court could not have been within the contemplation of the parties and rely upon the rule announced in *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng. Reprint 145, 5 Eng. Rul. Cas. 502, stating that

this rule has been generally accepted by this court as an accurate statement of the law on the subject and cite, among other authorities, *Miller v. Sullivan,* 77 Kan. 252, 255, 94 Pac. 266; 16 L. R. A. (N. S.) 737; 15 Ann. Cas. 561 and *Billups v. American Surety Co.,* 173 Kan. 646, 649, 251 P. 2d 237; that the contract in question is an indemnity contract under which plaintiffs are only entitled to damages to the actual loss sustained, and, that the damages permitted by the trial court constitute a penalty and should not be enforced, citing and relying upon *Beck v. Megli,* 153 Kan. 721, 114 P. 2d 305. The contention is not persuasive. When this case was here on its first appeal, the court analyzed the terms of Section 10 (t) and determined it was unnecessary to precisely declare whether the contract was one of indemnity or one providing for a penalty but concluded that its terms were express, clear and unambiguous; that its language must be given its plain and ordinary meaning without resort to further rules of construction and that it meant exactly what it said—that the defendants shall be liable for all damages to buildings or other property resulting from the work performed under the contract, and that if this court were to hold otherwise it would be making an agreement for the parties which they did not make for themselves. We have here determined that the defendants expressly fixed the measure of recovery of damages by this section to "repair, replace or reconstruct" at their own expense, all property damaged, or otherwise make amicable settlement therefor. A more concise statement of the purport of such section could not be made and it is reasonably clear that its terms indicate what the defendants contemplated them to mean when the contract was entered into. Section 10 (a) recites that the defendants carefully examined all contract documents and were fully informed as to the location of the proposed improvements and the conditions under which the work was to be accomplished, and further agreed that *"all loss or damage* arising from the nature of the work to be done . . . *from unforeseen circumstances or difficulties would be sustained by them.* (Emphasis ours.) While the standard of liability agreed to by the defendants may not have been prudent on their part, the reason for it seems to be more in the nature of consideration to secure the street improvement contract, which further indicates that they contemplated all that its terms provided. In *Klema v. Soukup,* 175 Kan. 775, 267 P. 2d 501, it was said: ". . . We are not concerned with whether the arrangement evidenced by the contract was prudent or not, but only with whether the contract is

clear and free from ambiguity or the converse." (l. c. 780.) In *Bailey v. Talbert*, 179 Kan. 169, 294 P. 2d 220, this court reiterated its holding that it does not determine whether a contract is prudent; that it is not the function of courts to make contracts but to enforce them as made. We again reiterate that the language of Section 10 is express, clear and unambiguous and fairly indicates that the parties contemplated the results of unforeseen circumstances or difficulties arising out of work pursuant to its terms.

The defendants cite *Beck v. Megli*, supra. The decision is not in point. That was an action to recover on a personal bond given to secure the performance of a written contract. The question there was whether the provision in the bond, stipulated as damages for the breach, was a penalty calling for proof as to the damage sustained, or liquidated damages requiring no proof in the event of default. It is unnecessary to define "penalty" or "liquidated damages" in this opinion since those words have been clearly defined and applied elsewhere in the reports of this court, we note, however, there is no provision in Section 10, or elsewhere in the contract, for either a penalty or liquidated damages as those terms are known in the law, nor can such be inferred from the language of such section as being the intention of the parties since it expressly fixed, by agreement, the basis by which the defendants would compensate owners of property damaged or destroyed by them in the performance of the contract.

We turn to plaintiffs' cross-appeal. In answer to questions Nos. 1 and 2 the jury found that the replacement cost of the dwelling was $5,800 and the personal property was $1,750. Following instructions Nos. 8 and 9, the jury deducted from these amounts the sums of $2,000 and $750, respectively, thus fixing their amounts as appear in the answer to question No. 5. These deductions resulted from defendants' pretrial efforts pursuant to G. S. 1949, 60-2850 to procure a copy of an alleged insurance policy they claimed was issued by the Swedish-American Insurance Company to the plaintiffs covering loss by fire destruction of the dwelling and the personal property. Upon plaintiffs failure to produce a copy of the alleged insurance policy, one of the defendants filed an affidavit pursuant to G. S. 1949, 60-2850, in which it was alleged that the plaintiffs were the owners and holders of a valid policy of fire insurance in full force and effect at the time of the fire issued by the Swedish-American Insurance Company insuring

the plaintiffs against loss by fire destruction of the dwelling and the personal property to the extent of $2,000 and $750, respectively; that following the fire the insurance company adjusted the loss and agreed in writing to pay the plaintiffs the total sum of $2,750 in full settlement of such loss.

The plaintiffs filed a motion to strike the defendant's affidavit from the files for the reason that the matters alleged therein did not constitute a defense upon which evidence could be introduced; that the facts set forth therein were incorrect, but if true, were immaterial, and that it was filed for the purpose of prejudicing the plaintiffs' rights. During the trial and in support of their motion to strike, the plaintiffs filed the affidavits of Anna Anderson and A. V. Stromquist, secretary of the Swedish-American Insurance Company. In her affidavit Anna Anderson stated she did not have insurance on the property in question *in the amount of $2,750* and that the insurance company did not *in writing* agree *to pay her $2,750* in settlement of the loss. Stromquist's affidavit recited that *neither of the plaintiffs made demand upon or filed a proof of loss requesting payment for any loss sustained,* and further, that the company had never, *in writing,* subsequent to the fire, *agreed to reimburse the plaintiffs for the loss of their dwelling and contents.* The trial court overruled plaintiffs' motion to strike.

The trial court instructed the jury in effect that it must presume, under the record in this case, the Swedish-American Insurance Company issued to the plaintiffs a valid fire insurance policy whereby it agreed to pay the plaintiffs the sum of $2,000 for the destruction of the dwelling and the further sum of $750 for the personal property; that the plaintiffs had the duty to minimize and mitigate their damages as much as reasonably possible; that plaintiffs could not recover any damages or loss they might, by reasonable diligence, have averted or prevented, and it was their duty to take prompt payment of their loss from Swedish-American Insurance Company in the amount of $2,750 and the fact they refrained from collecting such money prevented their recovering such amount from the defendants.

The plaintiffs contend that G. S. 1949, 60-2850 specifically requires that the documents requested be in the possession of or under the control of the adverse party and that there is nothing in the record to show plaintiffs had the documents requested except the affidavit of the defendant. It is the clear mandate of the statute that the

adverse party have possession or control of the documents sought, but a careful consideration of the language of the affidavits filed on behalf of the plaintiffs with respect to the insurance policy shows an evasive attitude. The most that may be said of Anna Anderson's affidavit is that she did not have insurance *in the amount of $2,750* and that the insurance company did not agree *in writing* to *pay her* $2,750 in full settlement of her loss. She did not deny that an insurance policy was in effect or that it was not in her possession and control at all times to produce for the inspection of the defendants, or, for that matter, that a settlement was not made. In these respects the affidavit of the defendant was not controverted.

On the basis of the record before us we do not think the trial court erred in overruling plaintiffs' motion to strike, nor in the giving of instructions Nos. 8 and 9. The plaintiffs had a duty to mitigate their damages and they cannot recover for loss they might, by reasonable diligence, have averted or prevented. We reduce the contention to its simplest terms: The plaintiffs sustained a loss which they are entitled to be made whole. They were third party beneficiaries of a contract in which the defendants expressly agreed to replace or reconstruct at their own expense the destroyed property or make amicable settlement therefor; they also had a contract with the Swedish-American Insurance Company insuring them against loss from fire; thus, they had two contracts protecting them against the loss of their property. When they collect on one of the contracts a part of the loss they may only collect on the other, the remainder. The fact that they refrained from collecting from the insurance company the amount alleged to be due on the contract did not preclude the trial court from instructing the jury to reduce the total replacement cost of the dwelling by such amount. A property owner who has two contracts protecting him against fire; one being a third party beneficiary contract to repair, replace or reconstruct the destroyed property, and another with an insurance company insuring them against loss from fire, is entitled to be made whole in case of a loss, and where he has the right to collect a part of his loss from the insurance company he may only collect the remainder from the defendant maker of the third party beneficiary contract. In *Georgetown Water, Gas, Electric & Power Co. v. Neale,* 137 Ky. 197, 125 S. W. 293, it was said:

". . . The plaintiff here, by his representative, the city, made a contract with the water company for fire protection. He also made a contract with an insurance company insuring him against loss from fire. He thus had two

contracts protecting him against the loss of his property. He is entitled to be made whole, and when he has collected on one of his contracts a part of his loss, he can only collect on the other the remainder." (1. c. 206.)

In *Warren Co. v. Hanson,* 17 Ariz. 252, 150 Pac. 238, it was said:

"The amount of insurance recovered is, in effect, a replacing by the insurance company of the property to the actual value of the net sum recovered. Such property so insured was not under the protection of the contract with defendant, because that property so covered by insurance to the value recovered was not a loss to plaintiff, and therefore, as he has received compensation for such property, he cannot recover its value from defendant; otherwise he could recover double compensation, which the law does not permit in such cases." (1. c. 260.)

The plaintiffs cite authorities in support of their contention that the amount of the insurance should not be credited against the judgment. We have examined those authorities but they announce the general rule in actions in tort and are inapplicable to contract actions.

We have carefully examined the record and find no error. The judgment is affirmed.

HALL, J., not participating.