No. 37,576

JOHN A. EASTWOOD, *Appellee*, v. ARTHUR JOHN EASTWOOD, *Appellant.*

(207 P. 2d 393)

Opinion filed June 11, 1949.

*Frederick G. Apt, Mitchell H. Bushey* and *Howard M. Immel,* all of Iola, were on the briefs for the appellant.

*Stanley E. Toland* and *J. D. Conderman,* both of Iola, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action to enjoin defendant from violation of an alleged contract with plaintiff. Judgment was for the plaintiff. Defendant appeals.

The petition alleged that plaintiff was a nephew of defendant and both resided on what will be called in this opinion "Stony Point Farm" in Allen county; that defendant acquired the farm in December, 1946, and he and his wife made it their home until the wife's death on November 21, 1947; that prior to the death of defendant's wife plaintiff was not a resident of Allen county but he and his wife resided at Pampa, Tex., where he had been operating an oil well service since July, 1946; that after the funeral service for defendant's

wife, defendant asked plaintiff and his wife to accompany him to Stony Point Farm; that while there defendant proposed to the plaintiff:

"That if plaintiff would give up his home and business at Pampa, Texas, and the plaintiff and his wife come to live with the defendant at Stony Point Farm and provide him with the comforts and conveniences of a home at Stony Point Farm and care for him and operate said farm for him, he (the defendant) would protect plaintiff from any loss in the operation of his business at Pampa, Texas, until it could be sold and he (the defendant) would stock said farm, furnish the necessary capital and any additional necessary labor to operate and develop said farm and home and at his (the defendant's) death said farm and the farming equipment and stock thereon would be plaintiff's property in payment for such services rendered him by plaintiff and his wife."

The petition further alleged that plaintiff verbally accepted such offer; that plaintiff then returned to Pampa; placed his business in the hands of others; his wife gave up a $50 a week secretarial position and they moved their household goods and furnishings to Stony Point Farm to make their home with defendant so defendant could begin the performance of his contract; that plaintiff and his wife returned to Stony Point Farm about the 11th of December, 1947, and made their home there and continued so to do in the performance of plaintiff's agreement with defendant until suit was filed; that plaintiff and his wife were 34 years old and were in good health and fully able to perform and continue the performance of the agreement with defendant; that defendant had farm machinery of the approximate value of $10,000; that he owned various residential properties at Guthrie, Okla.; farms with producing oil wells and about 4,200 acres of wheat land in Wyoming and personal property and by reason of all of these resources defendant was able to complete stocking the farm and furnishing the necessary capital for its development and operation; that defendant expressed his satisfaction with plaintiff's acceptance of his offer; that he purchased groceries and other provisions for the home; incurred the expenses of redecorating the rooms in the home to be occupied by plaintiff and his wife; plaintiff with his wife established themselves in the home with defendant; plaintiff's wife cooked the meals; kept the house; did the washing and ironing and other household tasks; looked after defendant and made him comfortable; helped him when he was not feeling well and needed attention; that the parties were congenial and the home life pleasant and agreeable; that defendant already had considerable farm machinery on the farm and pur-

chased additional machinery and equipment; that the crops were planted in the spring when the action was filed and a man hired to help with the farm work; that when defendant was not present to make purchase of food, groceries and pay other expenses necessarily incurred in operating the farm and home, plaintiff paid for the same and defendant reimbursed him for the first part of these expenditures; that plaintiff, with the help of his wife, had performed every part of the agreement the defendant would permit him to do and that they had given defendant their love, affection and companionship and plaintiff stood ready, willing and able to continue in the performance of the contract for the remainder of defendant's life, and that for reasons unknown to plaintiff and his wife and which defendant refused to divulge the defendant did at the time of filing the action and-had in recent weeks refused to further pay any of the expense of operation of the farm and home, forbid plaintiff to work in the field or otherwise operate the farm, refused to converse with the plaintiff and had not stocked the farm with livestock; that defendant now demanded that plaintiff and his wife leave the farm; said he was going to sell it; that on account of having relinquished their home at Pampa, Tex., plaintiff and his wife had no other home than that which defendant induced them to make with him at Stony Point Farm; that plaintiff and his wife had no other business or source of income than through plaintiff's continuing the performance of his agreement with the defendant, which plaintiff was willing, ready, able and desired to continue to do; that plaintiff had no adequate remedy at law and unless defendant was enjoined from breaching his contract plaintiff would suffer irreparable loss which could not be compensated in damages; that plaintiff believed defendant would force plaintiff and his wife to leave the farm and thus make it impossible for him to continue in the performance of his agreement with the defendant and that defendant intended to sell the farm and the farm implements and equipment thereon and make it impossible for plaintiff to continue in the performance of his agreement unless he was enjoined from doing so.

The prayer of the petition was that defendant be enjoined from the violation of his contract and for all proper, equitable relief.

The defendant first demurred to the petition on the ground it did not state facts sufficient to constitute a cause of action. This demurrer was overruled.

For an answer, defendant denied generally all the allegations of

the petition except that he admitted he was 78 years of age and that plaintiff was his nephew; that he was the owner of the land in question; that the plaintiff was then occupying part of the house located on the farm but denied plaintiff had any right to such occupancy.

The defendant specifically denied that he made the contract set out in the petition and alleged that if it had been made it was void by reason of the statute of frauds, that is, chapter 33, G. S. 1935.

The answer further alleged that if the contract was made that plaintiff had an adequate remedy at law and if it was breached plaintiff could be compensated in damages.

The reply was a general denial.

The trial court found that the contract was made, as follows:

"That plaintiff give up his home and business at Pampa, Texas, and that plaintiff and his wife live with the defendant at Stony Point Farm, provide defendant with the comforts and conveniences of a home at Stony Point Farm, and care for defendant and operate said farm for defendant, and that defendant protect plaintiff from any loss in the operation of his business at Pampa, Texas, until it could be sold, and that defendant stock said farm, furnish the necessary capital and any additional necessary labor to operate and develop said farm and home and that at defendant's death said farm and farming equipment and stock thereon be plaintiff's property in payment of such services rendered him by the plaintiff and his wife."

This agreement was made about November 24, 1947, and by its terms on its final and complete performance on the part of plaintiff, he would be entitled to receive the farm and personal property at the death of the defendant.

The findings then described the farm and found judgment should be rendered in favor of the plaintiff and against the defendant and enjoined the defendant from selling, disposing of, encumbering, mortgaging, alienating, assigning, bequeathing, devising or willing Stony Point Farm, or any part thereof, together with all personal property on the land, and defendant was enjoined from dispossessing or putting the plaintiff and his wife off the property. The closing words of the judgment were as follows:

"The defendant may farm said lands himself or with the help of the plaintiff, or defendant may rent out the tenant house and farming land under farm lease from year to year during defendant's life time, but defendant is enjoined, restrained and prohibited from dispossessing and putting plaintiff and his wife off of said property and from preventing or hindering plaintiff from holding himself in readiness there to continue the performance of his agreement with the defendant."

The defendant filed a motion for a new trial for the reason that the verdict was not sustained by sufficient evidence, was contrary to law and on account of error of law occurring at the trial and excepted to at the time by him.

This motion was overruled and defendant has appealed.

It should be noted here that at the close of plaintiff's evidence the defendant demurred to it and that demurrer was overruled.

The defendant appealed from the order overruling his demurrer to the petition of the plaintiff, from the order overruling his demurrer to the evidence and motion for judgment and from the orders wherein the court rendered judgment in favor of the plaintiff and against the defendant and from the order overruling defendant's motion for a new trial.

The argument of defendant is first that the contract pleaded was unenforceable because of the statute of frauds; that it was not in its terms sufficiently definite or certain to be enforceable; that the contract and evidence used to prove it lacked mutuality of remedies and could not be enforced in equity; that the petition and evidence showed that any claim the plaintiff might have could be compensated in damages and that the judgment of the district court was not consistent with the law and facts, was not equitable and not in conformity with the rules and law of equity.

At the outset, it may be said there was clearly sufficient evidence to prove that the contract pleaded was made. The plaintiff and his wife both testified to it and if the court believed them that was substantial evidence. The argument of defendant really is that the contract was not such a contract as equity will enforce. On the other hand, plaintiff appellee makes the point in his brief that he is not asking for the specific performance of a contract; that he is only asking that the defendant be enjoined from making it impossible for the contract to be performed.

We shall first consider defendant's argument that the contract pleaded is not enforceable because of the statute of frauds. That statute is G. S. 1935, 33-106, and provides, in part, as follows:

"No action shall be brought whereby to charge a party . . . upon any contract for the sale of lands, tenements, or hereditaments, or in any interest in or concerning them; . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

Defendant argues the contract pleaded is clearly one to convey or devise land in exchange for personal services under the statute of frauds and unenforceable. (See 27 C. J. 226; *Baldwin v. Squier*, 31 Kan. 283, 1 Pac. 591; *Roberts v. Roberts*, 130 Kan. 85, 285 Pac. 584.)

One feature of the contract alleged was that plaintiff would give up his home and business at Pampa and come to live with defendant at Stony Point Farm. The petition alleged full performance with that much of the contract. In fact, the petition alleged full performance of the entire contract up to the time the defendant endeavored to make it impossible for plaintiff to perform further. Under such circumstances we have held an oral contract to convey real estate in return for personal services was not invalid on account of the statute of frauds. See *Bless v. Blizzard*, 86 Kan. 230, 120 Pac. 351; *Dent v. Morton*, 143 Kan. 97, 79 P. 2d 875; and *Schoonover v. Schoonover*, 86 Kan. 487, 121 Pac. 485, where the rule is stated, as follows:

"The statute of frauds is not enforced against one who in reliance upon an oral contract has so far acted upon it that he cannot be restored to his original situation, and cannot be adequately compensated in damages." (p. 489.)

Should it be argued by defendant that this contract violated the statute of frauds because performance could take longer than a year, the answer is, it was one which would admit of performance within a year—hence was not within the statute. (See *Heery v. Reed*, 80 Kan. 380, 102 Pac. 846.) Unless an oral contract discloses it cannot be performed within the space of one year we cannot say it violates the provisions of the statute of frauds. (See *A. T. & S. F. Rld. Co. v. English*, 38 Kan. 110, 16 Pac. 82; *Pierson v. Milling Co.*, 91 Kan. 775, 139 Pac. 394; and *Stahl v. Stevenson*, 102 Kan. 447, 171 Pac. 1164.) Here the contract could have been performed within one year had defendant died within that time.

At the outset of his brief defendant takes the position that the granting of the injunction prayed for by the plaintiff was in fact the issuance of a negative order of specific performance. From that premise he argues that the rules governing the granting of the relief of specific performance should govern. This argument requires an examination of the record. In the first place, the petition alleged a contract whereby plaintiff was to give up his place of business and way of life and move onto and help operate a farm, a new

activity for him and his wife. They were to stay on the farm and make a home for defendant the rest of his life. In return defendant was to pay the expense of running the farm, equip it with stock and implements and at his death the farm was to go to plaintiff. Both parties proceeded to perform. Obviously for plaintiff to perform he and his wife must be on the place. After about six months defendant decided to breach the contract by ordering plaintiff off the farm, which would have made it impossible for plaintiff to carry out his contract. The petition alleged that defendant intended to sell the farm. The prayer was that defendant be enjoined from the violation of his contract.

The trial court found the contract was made; that on its complete performance plaintiff would be entitled to the farm and enjoined defendant from preventing plaintiff holding himself in readiness to continue to perform. It is true the court adjudged that plaintiff would be entitled to the farm on the complete performance of the contract. Nothing was adjudged, however, nor could anything be adjudged toward final enforcement. That can only come at the death of defendant and after plaintiff has performed during all that time. Should defendant be permitted to dispossess plaintiff and thus make it impossible for him to carry out his agreement it would do him irreparable damage. The rule is laid down in 32 C. J. 42, section 21, as follows:

"An injunction may be obtained to prevent an irreparable injury, even though no such injury has yet occurred. If such injury is threatened and impending to property rights, an injunction will be granted. It is not necessary to wait for the actual occurrence of an injury which it is shown may be reasonably expected. The remedy by interlocutory injunction being preventive in its nature, it is not necessary that a wrong should have been actually committed before a court of equity will interfere, since, if this was required, it would in most cases defeat the very purpose for which the relief is sought, by allowing the commission of the act which complainant seeks to restrain."

See, also, 21 C. J. 130, section 106, where the rule is stated, as follows:

"b. Preventive Relief, *Quia Timet.* A class of cases requiring special mention, where the jurisdiction depends chiefly or altogether upon the necessity for relief obtainable only in equity, is that of bills whose object it is to prevent anticipated mischiefs which would not after their occurrence be adequately redressed. Such bills are known by the generic term of 'bills *quia timet.*' While equity will not interfere for the purpose of declaring rights to prevent a possible controversy which has not yet arisen, or where no actual

danger to plaintiff's rights is shown, it will interfere to prevent a multi-plicity of suits, or an irreparable injury to a freehold, or to remove a cloud upon title, or to protect the subject matter of a controversy where there is actual danger that it may be so dealt with as to prejudice plaintiff's rights. Instances of this preventive jurisdiction are found in the protection afforded to those holding remainders and other rights *in futuro* against loss or injury at the hands of one in possession."

We recognized this principle in *Holland v. Holland*, 89 Kan. 730, 132 Pac. 989, where we held:

"A son who has supported his father for a number of years under an agreement that he is to become at once the owner of a tract of land, and that the legal title is to be vested in him at his father's death, by will or otherwise, and who in reliance thereon has improved the property and performed service the value of which cannot readily be estimated, is entitled to an injunction against the execution by his father of a deed to some one else." (Syl. ¶ 1.)

See, also, *Schoonover v. Schoonover*, 86 Kan. 487, 121 Pac. 485.

Had the defendant died on his trip to Wyoming before any trouble had arisen, the plaintiff would have been entitled to bring an action for specific performance. (See *Bless v. Blizzard*, 86 Kan. 230, 120 Pac. 351; *Schuler v. Rehberg*, 145 Kan. 176, 64 P. 2d 571.)

All he asked here, however, was that defendant be enjoined from preventing plaintiff from carrying out his agreement so that at the proper time, if he has in the meantime performed, he can bring his action for specific performance. The injunction asked for and granted was a preventive injunction. (See 22 Cyc. 741.) See, also, Restatement of the Law, Contracts, Paragraph 373, Illustration 3, page 685, where we find:

"In return for a promise of personal service, A contracts to transfer land to B on completion of the service. After part performance by B, A repudiates the contract. B is able and willing to complete the service as agreed. It may be proper for the court to issue an injunction against conveyance of the land to any third party, and an affirmative order that A shall convey it to B, upon completion of the service. If such a decree will tend to cause the continuance of undesirable personal relations, this fact will be considered in relation to the degree of inadequacy of other remedies available to B, including both damages for the breach and restitution of the value of the service rendered and improvements made."

See, also, *White v. White*, 124 Kan. 449, 260 Pac. 651, where we said:

". . . there is an abundance of authorities enforcing such provisions when made by contract, either written or oral, after the death of the owner of the property, and preserving and protecting such interest prior to his death. The facts and circumstances in the case of *Dillon v. Gray*, 87 Kan. 129, 123 Pac. 878,

are very similar to those in this case, and the court enforced the contract even against the claims of a second wife. See, also, *Nelson v. Schoonover,* 89 Kan. 388, 131 Pac. 147; *Schoonover v. Schoonover,* 86 Kan. 487, 121 Pac. 485; *Taylor v. Taylor,* 79 Kan. 161, 99 Pac. 814; *Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743. The courts will protect such rights by injunction or otherwise in the lifetime of the owner, if there is a danger of the property being disposed of or conveyed.

" 'A son who has supported his father for a number of years under an agreement that he is to become at once the owner of a tract of land, and that the legal title is to be vested in him at·his father's death, by will or otherwise, and who in reliance thereon has improved the property and performed service the value of which cannot readily be estimated, is entitled to an injunction against the execution by his father of a deed to some one else.' (*Holland v. Holland,* 89 Kan. 730, syl. ¶ 1, 132 Pac. 989.)" (p. 453.)

See, also, *Heery v. Reed,* supra; also, *Guzorek v. Williams,* 300 Mich. 633, 2 N. W. 2d 796.

Defendant next argues that his demurrer to plaintiff's evidence and his motion for judgment should have been sustained because the evidence showed there was no mutuality of remedies. He recognizes the rule that where there has been full performance and there is no remedy at law, specific performance of contracts to devise property will be enforced. He argues that here the contract has not been fully performed. He states that this is the first time specific performance of a contract to devise property has been sought before the services have been performed. In the first place, this is not an action for specific performance. It is, as has been pointed out, an action to enjoin one party to a contract from preventing the other party from performing. The language used in *White v. Massee,* 202 Iowa 1304, is in point here. There the court said:

"Defendants' main contention is that plaintiff's agreement is one for continuing personal services, not specifically enforcible against her, and therefore not mutual, and also, until completely performed by plaintiff, not subject to specific performance; that the suit for injunction is, in effect, for negative specific performance, and therefore cannot be maintained. The plaintiff is not now entitled to specific performance, nor does she claim that she is, either positively or negatively. Her suit is for an injunction restraining the defendants from interfering with or preventing her from performing her contract. Though she is not, at this stage of the case, entitled to specific performance, either positively or negatively, she is entitled to maintain a suit on the principle of *quia timet,* to preserve her rights in the contract and property, and to protect her in performance, to the end that she may ultimately be in a position to claim and secure the benefits of the contract. (*Chantland v. Sherman,* 148 Iowa 352, and cases cited; *Newman v. French,* 138 Iowa 482; *Campbell v. Dunkelberger,* 172 Iowa 385.)" (p. 1307.)

See, also 28 Am. Jur., Injunctions, sec. 79.

Plaintiff had partially performed his contract as to living on the farm and making a home for defendant. He had fully performed as far as giving up his home and business at Pampa, Tex., and moving to Allen county.

Defendant next points out the rule that equity will not decree specific performance of an oral contract to convey land where the promisee can be adequately compensated in damages for the breach. That is a well-established rule. We must reassert here that this is not an action to force the conveyance of lands. We will, however, examine the defendant's argument. Whether the promisee can be adequately compensated in damages depends upon the facts of each case. Here, besides the finding already quoted, there was a general finding on all the issues in favor of plaintiff. These findings were not attacked in any way by the defendant. Such a finding carried with it a finding on all the issues necessary to uphold the judgment in favor of plaintiff. Defendant argues that when he saw fit to advise plaintiff of his intention to breach the contract plaintiff was bound to accept the renunciation of the contract by defendant and sue for damages. This is not the rule. In *Heery v. Reed,* supra, we said, in considering an analogous question:

"The discharge operated, it is true, as a breach of the contract, and when it occurred Maggie had the option to treat the contract as broken and sue for damages. On the other hand, Devenney could not force his renunciation of the contract upon Maggie. She was at liberty to treat the renunciation as inoperative and to hold herself in readiness to do that which the contract required of her and await the death of the Devenneys for complete performance and full payment." (p. 385.)

There is substantial evidence here that what plaintiff contracted to do was of a peculiar, intimate, confidential nature. The defendant was a wealthy, somewhat elderly man who stood in need of loving, considerate care, such as could not readily be measured in money. The contract mentions "make a home," "provide comforts and conveniences of a home." This is something far more than hiring a farm hand or even a general overseer. Besides this, the plaintiff and his wife gave up their home and business in Pampa and came up to the Allen county farm. This was more than just a business step. Neither plaintiff nor his wife were trained in farm life. The move really was a change in a way of life as well as a business venture. Defendant makes quite a point of the fact that

plaintiff did not have much of a home in Pampa and not much of a business. The record hardly bears out such an assertion. It appears he was a graduate petroleum engineer and operating a prosperous well-servicing business. His home no matter how humble was still his home. He and his wife left all this, as well his wife left her secretarial position, for a venture that at the best was certain to make them somewhat subservient to defendant's ideas. We conclude there was substantial evidence that plaintiff could not be compensated in money.

Defendant next argues that the contract proven was so indefinite and uncertain that equity will not enforce it. No doubt it is the rule that in order for a contract to be specifically enforced it must be definite and certain in its terms and "he and his wife"—"this is to be yours when I am through with it" are general terms. Oral contracts are not generally entered into with the nice use of words with which written contracts are drawn. Usually they are, as this contract was entered into, the result of several conversations, some of them casual. Such contracts must be considered and examined together with all the surrounding facts and circumstances. It will not do to lift the contract pleaded and proven out of the context. The words "live with defendant"—"provide defendant with the comforts and conveniences of a home"—"care for defendant"—"when I am through with it it is yours" all are rather indefinite, but when we examine them with all the surrounding facts and circumstances and in the light of all we know about the relationship of the parties, we have no trouble in knowing what was intended. In *Schuler v. Rehberg,* supra, we said:

"The words 'care for,' 'when needed' and 'when requested,' used in the contract are quite indefinite, but when we consider the prior relation of the parties it is quite clear they understood the terms of the contract and the obligations imposed by the language used. Their subsequent conduct and relations confirm this view." (p. 182.)

See, also, *Bless v. Blizzard,* supra; *Smith v. Cameron,* 92 Kan. 652, 141 Pac. 596; and *Berry v. Davenport,* 106 Kan. 393, 188 Pac. 223.

Defendant next argues that the judgment of the trial court is so inequitable, unreasonable and unjust as to be incapable of enforcement. In support of this argument defendant points out that the effect of the judgment is to cause plaintiff and his wife to live in the

same house with defendant as long as defendant lives. The contract defendant has been enjoined from violating was freely and knowingly entered into by both plaintiff and defendant. Defendant for no good reason saw fit to breach it. We have concluded the trial court was correct in holding that it would not be equitable to permit him to do so.

The judgment of the trial court is affirmed.