275 P.2d 403

William REMELE and Cecile Belding, his
Guardian, Appellants,

v.

Vera Faye HAMILTON, Appellee.

No. 5818.

Supreme Court of Arizona.

Oct. 18, 1954.

46

John W. Ross, Tucson, for appellants.

Udall & Udall, Tucson, for appellees.

PHELPS, Chief Justice.

Vera Faye Hamilton, referred to as plaintiff, brought this action in the Pima County Superior Court against William Remele and Cecile Belding, his guardian, referred to as defendants herein, to enjoin the defendants from interfering with the plaintiff's possession of a piece of property, the subject of this litigation, or from violating his contract with plaintiff by making it impossible for her to fully perform her part of said contract or from making a will devising said property to another in violation of his contract with plaintiff.

In 1939 the defendant William Remele and his brother Henry who were nearing 70, approached Miss Hamilton, a lifetime acquaintance and asked her to take up employment as their housekeeper at Bagley, Iowa. Miss Hamilton accepted their offer, moved into their home, and lived

with them continuously thereafter. At first, William Remele agreed to pay her $3 per week and furnish room and board but later the cash payment was increased to $4. Finally, however, in 1944 Remele stopped making these payments and thereafter Miss Hamilton was not remunerated for her services although the brothers gave her gifts of cash and bonds on special occasions such as birthdays and holidays.

During the course of her service with them both of them exacted a pledge from Miss Hamilton that she would remain with them "always" and they assured her that she would be well repaid.

They moved to Tucson, Arizona, in 1945 and in February of 1947 William Remele purchased a home at 3444 South Lundy Avenue (the subject of this litigation) in Tucson, Arizona, where a permanent home was established. This home served as the residence of Miss Hamilton, William Remele and his brother Henry, who by this time had become partially paralyzed.

Soon after William purchased the Tucson home he made an oral statement or promise to Miss Hamilton, in substance, that the home was equally hers and that eventually it would be left to her, and that it was in payment for the services rendered and to be rendered in the future and for her promise to remain "always" with the brothers. Miss Hamilton continued thereafter to live with defendant and his brother and to render services not only of a domestic nature but in caring for their ills.

On September 29, 1947, William Remele executed his last will and testament whereby his home was devised to Miss Hamilton. There was also incorporated in said will a devise to Cecile Belding, his niece, appellant herein, of a 240-acre farm located in Iowa of the value of approximately $60,000 and producing an annual income of approximately $3,000. Shortly thereafter Remele delivered a copy of this will to Miss Hamilton.

In October, 1949, while Remele was hospitalized, Henry Remele remained in the home under the care of Miss Hamilton until a few days prior to February 23, 1950, when he died. While William Remele was still in the hospital in January, 1950, Mrs. Belding, his niece, brought a guardianship proceeding in superior court and had him adjudged mentally incompetent and was appointed as guardian.

Upon William's release from the hospital Mrs. Belding took him into her home and cared for him with the help of a nurse. Miss Hamilton offered several times to take William back into his home and attend to his needs but Mrs. Belding refused to permit her to do so.

On January 15, 1951, Mrs. Belding demanded that Miss Hamilton remove herself from the William Remele home so that she could sell the property to pay debts owed by his estate for nurses' wages, fees for the guardian and attorney's fees. This action was then commenced by the plaintiff on May 21, 1951, to enjoin defendant

48

from carrying out these purposes and preventing her from completing her contract with William Remele.

Judgment was rendered for plaintiff and against defendant enjoining him (1) from leasing, selling, or encumbering the property here involved; (2) from preventing plaintiff in holding herself in readiness to perform her oral contract with defendant; (3) from interfering with plaintiff's possession of said property and to share possession thereof with defendant when he desired to share such premises with her; (4) from making any will or testamentary instrument which would violate his contract with plaintiff and declaring such will to be void; and (5) provide for vesting of title to such property in plaintiff in the event defendant predeceased her. Defendant appeals.

Defendant has presented for our consideration a number of assignments of error which we will consider in the order presented.

It is first urged that under the provisions of section 23–105, A.C.A.1939, the court erred in permitting plaintiff and other witnesses to testify to conversations and statements made by William Remele constituting his part of the alleged oral agreement between him and plaintiff for the reason that Remele was incompetent to testify at the time of the trial.

This court has consistently held such statements to be admissible under the terms of the statute itself when the court requires the witness to testify and that overruling the objection to the admissibility to such evidence "was equivalent to requiring the appellee to testify". Davey v. Janson, 62 Ariz. 39, 153 P.2d 158, 161; Goldman v. Sotelo, 7 Ariz. 23, 60 P. 696. There are a number of other cases to the same effect which we do not deem necessary to cite.

Assignment No. 2 claims error in entering the judgment against defendants creating a trust in favor of plaintiff on the real estate here involved for the reason that the judgment rested on parol evidence. In other words, the contract being oral, violated the statute of frauds, A.C.A.1939, § 58–101. The answer is first, that the judgment does not impress a trust upon said property, it merely maintains the status quo of the parties under the oral agreement; second, the statute of frauds was not pleaded, Mallamo v. Hartman, 70 Ariz. 293, 219 P.2d 1039; and third, that it was not available to defendant for the reason that defendant had at that time fully performed his part of the contract with plaintiff by executing the will to her and that plaintiff had, at that time, fully performed her part of the contract except insofar as she had been prevented from performance by the guardian of William Remele. Under such circumstances the transaction was taken out of the statute of frauds. Condon v. Arizona Housing Corporation, 63 Ariz. 125, 160 P.2d 342.

The third assignment is that it was error to enter judgment enforcing the alleged oral agreement for the reason that such contract, if it existed, could not be fully performed until the death of defendant Remele. The instant action is not an action for specific performance of the oral agreement. As above stated, it is an action primarily to enjoin defendant from changing the status quo of the parties under the oral agreement which, if permitted, would make it impossible for plaintiff to fully perform her part of the contract during the life of defendant Remele. That an injunction will lie in such a case, see Pflugar v. Pultz, 43 N.J.Eq. 440, 11 A. 123, and Bird v. Pope, 73 Mich. 483, 41 N.W. 514. This is accomplished as pointed out in Eastwood v. Eastwood, 167 Kan. 471, 207 P.2d 393, 399, in an equity proceeding known as a "bill quia timet". That case held that the attempted alienation of property which the owner had previously orally agreed to will to his nephew and wife in consideration of their promise to reside with him and perform personal services for him during his life would be enjoined where the person agreeing to render such personal services had so changed his position that he had no adequate remedy at law, and that the statute of frauds in such a case was not available as a defense to that cause of action. See also White v. Massee, 202 Iowa 1304, 211 N.W. 839, 66 A.L.R. 1434; 106 A.L.R. 760 and 7 A.L. R.2d 1181, et seq. See also 30 C.J.S., Equity, § 40 b., page 363, where the rule is stated as follows:

"b. Preventive Relief, Quia Timet

"Equity may entertain jurisdiction to prevent the commission of anticipated wrongs.

"A class of cases requiring special mention, where the jurisdiction depends chiefly or altogether on the necessity for relief obtainable only in equity, is that of bills, known as 'bills quia timet,' whose object it is to prevent anticipated mischiefs which could not after their occurrence be adequately redressed."

The statement is adopted and recognized by the Restatement of the Law, Contracts, paragraph 373, illustration 3, p. 685:

"3. In return for a promise of personal service, A contracts to transfer land to B on completion of the service. After part performance by B, A repudiates the contract. B is able and willing to complete the service as agreed. It may be proper for the court to issue an injunction against conveyance of the land to any third party, and an affirmative order that A shall convey it to B upon completion of the service. If such a decree will tend to cause the continuance of undesirable personal relations, this fact will be considered in relation to the degree of inadequacy of other remedies available to B, including both damages . .

for the breach and restitution of the value of the service rendered and improvements made."

It is indisputable that plaintiff in this case changed her entire position in life to accept the offer of defendant Remele. In the first place she left her home in 1939 at which time she was residing with her family and entered the home of defendant Remele and his brother to perform the general duties of housekeeping for them. At the time she accepted his offer she sold her home in Iowa, surrendered a life of privacy and assumed in addition to her housekeeping duties, those of providing comforts for two elderly gentlemen. Later in 1945 she moved with him and his brother from Iowa to Arizona in order to fully perform her agreement with defendant Remele. The services rendered by her included not only her household duties but the care of defendant and his brother, neither of whom were well, at all times day or night during illness. She received a mere pittance as a wage from 1939 to 1943 and from 1944 on she received no wages at all, as stated above, the only compensation received being in the nature of gifts on holidays and birthdays. The instant case therefore falls within the rule laid down in Eastwood v. Eastwood, supra.

Defendant next contends in assignments 4 and 5 that it was error to enter the judgment appealed from in this case because it was not shown that the plaintiff did not have an adequate remedy at law; second, for the reason that the agreement lacks mutuality; third, that the nature of the services rendered by defendant could not be furnished by plaintiff. The above statement showing a change in her position in life and the nature of services rendered makes it very apparent that plaintiff had no adequate remedy at law.

It is difficult to understand upon what defendant bases his claim that the agreement between plaintiff and defendant lacks mutuality. We held in Gates v. Arizona Brewing Co., 54 Ariz. 266, 95 P.2d 49, 51 that:

" 'Mutuality of contract consists in the obligation on each party to do, or to permit something to be done, in consideration of the act or promise of the other. * * * Mutuality of obligation is an essential element of every enforceable agreement.' "

The agreement between plaintiff and defendant fully meets this requirement. There is a wide distinction between mutuality of contract and mutuality of remedy.

Defendant's agreement with plaintiff did not expressly require her to perform the services of a nurse although she did perform the services of a practical nurse during the illness of Henry Remele as well as for defendant on frequent occasions for a considerable period prior to defendant Remele entering the hospital in 1949. Insofar as the records disclose plaintiff could have procured the services of a

nurse for defendant Remele in his home at no greater cost than the guardian incurred in procuring such services. We are of the view that assignments 6, 8 and 9 are without merit. If, as pointed out above, the statute of frauds was not available to defendant Remele, the refusal of the court to permit him to plead the statute after the close of the case was not error regardless of whether there was sufficient evidence in the record to authorize such an amendment.

Plaintiff concedes that she could not maintain an action in specific performance against defendant Remele until his death. She does maintain, however, that Remele had fully performed his part of the contract by executing the will and that she had fully performed her contract until prevented from further performance by the guardian of defendant Remele and that she is entitled to have the status quo of the parties maintained as long as she continues to perform or hold herself in readiness to perform her part of the contract with defendant. With this we agree.

■ The oral agreement in question consists of conversations between the parties over a considerable period of time and therefore is not susceptible of the same character of proof as if it had been consummated at one time or with the same clarity of terms as a written agreement. It is our view that the oral agreement in question was fully established and sustains the judgment of the trial court.

We believe assignment No. 7 directed at the form of judgment has a valid basis but do not think it constitutes reversible error as we will hereinafter point out.

■ The judgment of the court in enjoining Remele from making any will or testamentary instrument which would violate his contract with plaintiff was within the power of the court in order to preserve the status quo of the parties. Eastwood v. Eastwood, supra; Newman v. French, 138 Iowa 482, 116 N.W. 468, 18 L.R.A.,N.S., 218; Holland v. Holland, 89 Kan. 730, 132 P. 989; 7 A.L.R.2d 1178, note 5. We believe, however, that the court exceeded its jurisdiction in incorporating in the judgment paragraph 4, reading as follows:

> "It is adjudged and decreed that should the defendant, William Remele, precede the plaintiff in death, the plaintiff will become, at his death, the sole owner of both the legal and equitable titles to the real property described in this judgment, and it is decreed that the heirs and devisees of the defendant, William Remele, shall have no title or interest whatsoever in or to the said real property;"

Therefore paragraph 4 should be deleted from said judgment. It is our view that the vesting of title in plaintiff could only be accomplished by probating the defendant's will after his death wherein he devised said property to plaintiff or by an action for specific performance of the oral agreement.

We are also of the opinion that paragraph 5 of the judgment should be amended to read:

"It is further adjudged and decreed that so long as plaintiff continues to perform her part of said oral agreement or holds herself in readiness to perform the same, defendant William Remele is enjoined from making any will or testamentary instrument which would violate his contract with the plaintiff to devise the above described property to her."

The remainder of said paragraph 5 should be deleted.

Although the incorporation in the judgment of the provisions above deleted was beyond the jurisdiction of the court it does not require a reversal thereof. Amendments suggested to conform with the above will cure the defect.

It is ordered that the judgment be amended as above indicated, and as amended, is affirmed.

STANFORD, LA PRADE and WINDES, JJ., and FRED C. STRUCK-MEYER, Jr., concur.

UDALL, J., having disqualified himself, STRUCKMEYER, Jr., Judge of the Superior Court of Maricopa County, was called to sit in his place and stead in the above entitled cause.